**JARDIM, MEISNER & SUSSER, P.C.**
Thomas C. Jardim, Esq. (011041994)
Scott D. Salmon, Esq. (152162015)
30B Vreeland Road, Suite 100
Florham Park, NJ 07932
Tel:     (973) 845-7640
Attorneys for Plaintiff, Albert Dejewski

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION, COUNTY OF PASSAIC

| | |
|---|---|
| ALBERT DEJEWSKI,<br><br>    Plaintiff,<br><br>  v.<br><br>NATIONAL BEVERAGE CORP. and JOSEPH CAPORELLA,<br><br>    Defendants. | Docket No.:<br><br>Civil Action<br><br>**COMPLAINT** |

Plaintiff, Albert Dejewski ("Dejewski" or "Plaintiff"), by way of Complaint against National Beverage Corp. ("National Beverage" or "LaCroix")[1] and Joseph Caporella ("Caporella") (collectively, the "Defendants"), states as follows:

**INTRODUCTION**

1. This Complaint arises from the termination of Dejewski's employment with LaCroix, as directed by Caporella, the President of LaCroix. Defendants terminated Dejewski's employment immediately following, and in retaliation to, Dejewski's reporting of violations of law that Dejewski reasonably believed violated the common law and both state and federal statutory law, including without limitation, N.J.S.A. 56:8-2, *et seq*., the Securities Act of 1933, the Securities Exchange Act of 1934, and the Sarbanes-Oxley Act of 2002. Plaintiff seeks statutory remedies provided for under the New Jersey Conscientious Employee Protect Act, N.J.S.A. 34:19-1, *et seq*.

**THE PARTIES AND JURISDICTION**

2. Albert Dejewski is a citizen of the United States of America who resides in Wayne, New Jersey, which is located in Passaic County. Dejewski was, at all times referenced in the Complaint, an

---

1. LaCroix is a subsidiary of National Beverage and the primary brand referenced herein. To avoid confusion with the rest of the company, as well as with the widely known National Broadcasting Company ("NBC"), National Beverage shall be referred to where possible as LaCroix.

— 1 —
COMPLAINT

employee of National Beverage and directly supervised by Caporella. Dejewski worked, at all times referenced in the Complaint, in the State of New Jersey.

3. National Beverage is a corporation organized under the laws of the State of Delaware with a principal address of 8100 SW Tenth Street, Suite 400, Fort Lauderdale, FL 33324. LaCroix trades on the NASDAQ Stock Market under the ticker symbol, "FIZZ."

4. National Beverage is a subsidiary of IBS Partners, Ltd., a Texas limited partnership whose sole general partner is IBS Management Partners, Inc., which is owned by Nick Caporella, the Chief Executive Officer of National Beverage and Joseph Caporella's father.

5. National Beverage employs individuals in the State of New Jersey, enters into contracts in the State of New Jersey, sells goods to wholesalers and retailers in the State of New Jersey, and is subject to the laws and jurisdiction of the State of New Jersey.

6. Upon information and belief, Joseph Caporella is a resident of the State of Florida, residing at 19385 Waters Edge Street, Weston, FL, 33332, and the President of National Beverage Corp.

7. Caporella assisted and/or participated in the illegal and retaliatory termination of Dejewski and the decision to illegally deny him certain compensation otherwise owed to him.

**GENERAL ALLEGATIONS**

8. National Beverage Corp., through its subsidiaries, develops, produces, markets, and sells a portfolio of flavored beverage products in North America and internationally, and is perhaps best known for its LaCroix beverage.

9. Through early 2018, LaCroix and its executives were the subjects of multiple lawsuits alleging that they were withholding information from stockholders.

10. In October 2018 and January 2019, two class action lawsuits were filed against LaCroix alleging that its executives had made false claims to stockholders and that the company had produced misleading advertisements related to whether the beverage was "all natural" as LaCroix claimed.

11. Simultaneously, there was public concern that LaCroix, by and through LaCroix, used a toxic chemical known as Bisphenol A ("BPA") in its cans. BPA is used to coat containers that hold food and trace amounts have been known to seep into the food or drink itself.

12. Some states, like California, have classified BPA as a toxic chemical that could cause cancer, birth defects, or other reproductive harm, although the Food and Drug Administration has stated that BPA is safe at the current levels occurring in foods.

13. Regardless, at some point in early 2019, LaCroix decided to start using new cans that were BPA-free to avoid any controversy. However, the process of developing such a can and manufacturing it in sufficient quantities was a massive undertaking that was expected to take several months. Further, LaCroix had a large stockpile of cans that contained BPA, which the company planned to use.

14. Notwithstanding, LaCroix's stock price has fallen from an all-time high on September 25, 2017 of $125.44 per share to $45.15 as of the opening bell on May 31, 2019.

15. Dejewski was hired by National Beverage on or about April 18, 2018. His title was "Vice President of Commercial Development & Engagement – LaCroix Sparkling Beverage," and, pursuant to his Employment Offer, was to report directly to Caporella, the President of National Beverage. In this role, Dejewski was hired to develop sales and marketing strategies, programs to drive increased awareness and sales nationally, regionally, and with specific accounts on behalf of LaCroix.

16. Dejewski worked out of his home in New Jersey, although LaCroix was primarily based out of Fort Lauderdale, Florida. Dejewski performed services for LaCroix as an employee of New Jersey and was employed in New Jersey.

17. Dejewski performed exceedingly well in this role: Greg Kwederis, the Executive Director – Beverage Analyst, for National Beverage informed Dejewski that Caporella had said, "We need more thinking like 'Dejewski" brings to the table . . . we are much better because of him." That was the week of April 1, 2019. Kwederis has been an employee of National Beverage for more than 22 years and is one of Caporella's most trusted advisors.

18. At no point was Dejewski ever given a negative performance review or told that his work was subpar. To the contrary, he was quickly accepted by LaCroix and Caporella as one of its finest executives, worth emulating, and trusted as a senior advisor to the company. Caporella even asked Dejewski to speak spontaneously with leadership teams across the company to share his thinking, strategies, and plans, at a leadership meeting in March 2019 in Orlando.

19. Just days later, on April 9, 2019, Dejewski received a telephone call from Kate Zelenka, who is the Consumer Insights Analyst for National Beverage and a direct subordinate of Kwederis. Zelenka also provided analytical support to Dejewski related to his marketing program initiatives.

20. During the telephone conversation, Zelenka sounded distressed and said that she was upset because Caporella had decided to prematurely announce that the LaCroix cans would be BPA-free going forward, months before the true production date, in order to drive positive buzz and awareness for the suffering brand.

21. Upon information and belief, LaCroix was at a minimum 4-6 months away from being able to replace its cans with ones that were BPA-free.

22. Upon information and belief, Caporella was advised by multiple senior executives as well as LaCroix's general counsel (Michael King) not to make the announcement because it was misleading at best, outright false at worst.

23. As such, Caporella knew that making such an announcement would be a false advertisement.

24. Zelenka knew that Dejewski was close to Caporella and asked Dejewski to request that Caporella hold off on the announcement and reconsider his decision.

25. During the course of the day, April 9, Zelenka and Dejewski traded text messages discussing the BPA issue and their concerns with Caporella's planned announcement. Zelenka stated, via text message, that "[s]aying we are BPA Free when we are not. This truly feels like an integrity issue now." Dejewski responded, "Yup. I will clearly communicate that."

26. On April 10, Zelenka sent Dejewski a text message stating that the Fort Lauderdale office was "tense" over the BPA issue. She indicated that Tamara Atkins, the Vice President of Sales and Marketing at National Beverage and who also serves as Caporella's personal assistant, had asked Zelenka to ask Dejewski to help with their concerns over Caporella's decision.

27. Dejewski also spoke with Kwederis, Zelenka's direct supervisor, about his concerns about the ethics and legality of Caporella's planned announcement. Kwederis encouraged Dejewski to speak up.

28. That day, April 10, Dejewski attempted to call Caporella to discuss the BPA issue, along with other concerns regarding their publicity crisis. When he was unable to reach Caporella, Dejewski drafted and sent an e-mail to Caporella that identified his concerns with the BPA matter as well as other issues. Caporella responded shortly thereafter, stating, among other things, that he didn't "know how you heard about BPA, but tell your source if they want to stay with the company, what's said in Ft Lauderdale, stays in here!"

29. Less than 24 hours later, on April 11, Dejewski received a telephone call from Caporella and King, during which Dejewski's employment was abruptly terminated, effective immediately.

30. Caporella stated that Dejewski's e-mail went too far with the BPA issue specifically, and that since Dejewski's thinking was not aligned with LaCroix, he was no longer a fit. Caporella explicitly stated that Dejewski had violated his trust by questioning his decision to falsely state that the LaCroix cans were now BPA-free when they were not, and that is why he was being terminated. During the entirety of the conversation, King never spoke up and remained silent.

31. As stated, in his nearly one year of employment at LaCroix, Dejewski had only received positive performance feedback and told that his work was exemplary.

32. Notwithstanding, he was abruptly terminated solely, explicitly, and exclusively because he raised his concerns about the ethicalness and legality of Caporella's decision.

**FIRST CAUSE OF ACTION**
**Conscientious Employee Protection Act**
**(N.J.S.A. 34:19-1, et seq.)**

33. Plaintiff repeats and reasserts every allegation above as if set forth herein.

34. Plaintiff reasonably believed that the Defendants were engaging in wrongful activities and conduct in their planned promotion of BPA-free cans, which activities and conduct violated either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy.

35. Plaintiff expressed his concerns to key LaCroix executives; specifically, Defendant Caporella.

36. Plaintiff performed a "whistle-blowing" activity as described in N.J.S.A. § 34:19-3c.

37. Defendant retaliated against Plaintiff by terminating his employment in violation of his rights under the New Jersey Conscientious Employee Protection Act, in violation of N.J.S.A. § 34:19-3.

38. But for Plaintiff's whistleblowing activity, Plaintiff would not have been terminated from his employment with LaCroix.

39. As a result of Defendants' conduct, Plaintiff was damaged.

**WHEREFORE**, Plaintiff demands judgment against Defendants for:

a. An award of damages for lost salary, employee benefits, and other lost compensation (plus interest);

b. An award of damages for pain, suffering, emotional distress, and humiliation;

c. An award of liquidated damages equal to the sum of all of the damages and interest;

d. An award of statutory damages, if applicable;

e. An award of punitive damages where permitted by law;

f. An award of attorneys; fees and costs of suit; and

g. Such other legal or equitable relief as may be just and proper.

**SECOND CAUSE OF ACTION**
**Breach of Good Faith and Fair Dealing**

40. Plaintiff repeats and reasserts every allegation above as if set forth herein.

41. Plaintiff and National Beverage had an employment agreement based upon the written offer presented by National Beverage and accepted by Plaintiff.

42. Pursuant to the terms of that agreement, Plaintiff was entitled to up to 30% of his annual salary as a bonus for each year that Plaintiff worked for Defendants.

43. Plaintiff was required to be employed by Defendants on the payout date.

44. Defendants acted in bad faith when they noticed Plaintiff of his termination after 359 days of employment, just six days shy of being eligible for his bonus.

45. Defendants took several actions to circumvent their obligation to pay Defendant a bonus as contractually required.

46. Defendants breached the implied covenant of good faith and fair dealing.

47. Plaintiff was damaged as a result of Defendants' breach of the implied covenant of good faith and fair dealing.

**WHEREFORE**, Plaintiff demands judgment against Defendants for:

   a. An award of damages for lost salary, employee benefits, and other lost compensation (plus interest);

   b. An award of damages for pain, suffering, emotional distress, and humiliation;

   c. An award of liquidated damages equal to the sum of all of the damages and interest;

   d. An award of statutory damages, if applicable;

   e. An award of punitive damages where permitted by law;

   f. An award of attorneys; fees and costs of suit; and

   g. Such other legal or equitable relief as may be just and proper.

### DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, Thomas C. Jardim, Esq., is designated as trial counsel for Plaintiff.

Dated: June 6, 2019                                **JARDIM, MEISNER & SUSSER, P.C.**

                                                   /s/ Thomas C. Jardim, Esq.
                                                   Thomas C. Jardim, Esq.

**RULE 4:5-1 CERTIFICATION**

I hereby certify, pursuant to Rule 4:5-1, that the within action is not the subject of any pending action or arbitration proceeding, nor is there any other action or arbitration proceeding contemplated. I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: June 6, 2019                                                **JARDIM, MEISNER & SUSSER, P.C.**

                                                                   /s/ Thomas C. Jardim, Esq.
                                                                   Thomas C. Jardim, Esq.